# ROSENBERGER v. PACIFIC EXPRESS COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 249.　Argued March 8, 1916.—Decided April 24, 1916.

Speaking generally the States are without power to directly burden an interstate shipment until after its arrival and delivery and sale in original package; and this rule applies to the movement of intoxicating liquor as to other commodities.

The Wilson Act only modifies this rule as to shipment of intoxicating liquors so as to bring them under state control after delivery, but before sale, in the original package.

The power to make interstate commerce shipments C. O. D. is incidental to right to make the shipment, and an attempt by the State to prohibit contracts to that effect or prevent fulfillment thereof is, as a burden upon, and an interference with, interstate commerce, repugnant to the Federal Constitution.

The interstate commerce which is subject to the control of Congress embraces the widest freedom including the right to make all contracts having a proper relation to the subject.

The power of the State to control interstate C. O. D. shipments prior to the enactment of the United States Penal Code cannot be deduced from the enactment of § 239 of that Code prohibiting them.

Since the enactment, and by virtue of the Wilson Act and the remedial authority thereby conferred by Congress on the States to regulate sales of liquor after arrival in the State and before sale in the original packages, a State has power to prevent solicitation of orders for intoxicating liquors to be shipped from other States. *Delamater* v. *South Dakota,* 205 U. S. 93.

The statute of 1907 of Texas imposing special licenses on Express Companies maintaining offices for C. O. D. shipments of intoxicating liquors is an unconstitutional burden on and interference with interstate commerce and does not justify an Express Company accepting such a shipment from refusing to deliver the same; and in this case *held* that such refusal amounted to conversion of the goods.

THE facts, which involve the constitutionality under the commerce clause of the Federal Constitution of the

statute of the State of Texas imposing licenses on places of business of Express Companies where intoxicating liquors are delivered C. O. D., are stated in the opinion.

*Mr. J. J. Vineyard* and *Mr. A. F. Smith*, with whom *Mr. Frank F. Rozzelle* was on the brief, for plaintiff in error.

*Mr. I. N. Watson*, with whom *Mr. J. L. Minnis* was on the brief, for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

On the taking effect in Texas on the twelfth day of February, 1907, of a law imposing a state license tax of $5,000 annually on each place of business or agency of every express company where intoxicating liquors were delivered and the price collected on C. O. D. shipments, and by which law one-half of the amount of the state license was in addition authorized to be imposed by every county or municipality, the Express Company, the defendant in error, discontinued at all its agencies in Texas all such business. As a result the Company sent back to Kansas City, Missouri, the packages of intoxicating liquor which it had received under C. O. D. shipments made to various places in Texas from Kansas City by Rosenberger, the plaintiff in error, and tendered them to him conditioned on his payment of the return carriage charges. Rosenberger refused to accept the offer and brought this suit to recover the value of the merchandise on the ground that the failure to carry out the shipments was a conversion. The trial court holding the Texas act was repugnant to the commerce clause of the Constitution of the United States and afforded no justification to the Express Company for refusing to carry out the shipments, awarded the relief sought. And the object of this writ of error is to obtain a reversal of a final judgment of the court below reversing

the trial court and rejecting the claim on the ground that the Texas license law was not repugnant to the commerce clause and afforded ample authority to the Express Company for refusing to complete the interstate shipments in question. 258 Missouri, 97.

Passing minor contentions whose want of merit will be hereafter demonstrated, it is clear that the issue is this: Was the state license law if applied to C. O. D. interstate commerce shipments repugnant to the commerce clause of the Constitution? It is certain that this question, in view of the date of the law and of the shipments involved, must be determined in the light of the operation of the commerce clause as affected by the power conferred upon the States by what is usually known as the Wilson Law (Act of August 8, 1890, c. 728, 26 Stat. 313), and wholly unaffected by § 239 of the Penal Code enacted by Congress March 4, 1909, prohibiting the shipment of intoxicating liquors under C. O. D. contracts, and also without reference to the act of Congress known as the Webb-Kenyon Law of March 1, 1913 (c. 90, 37 Stat. 699).

Thus limited, as it is not controverted and indeed is indisputable that the provisions of the statute placed a direct burden on the shipments with which it dealt and in fact were prohibitive of such shipments, it follows that error was committed in holding that the statute was not repugnant to the Constitution of the United States in so far as it applied to interstate C. O. D. shipments for the following reasons: (a) Because it is settled from the beginning and too elementary to require anything but statement that speaking generally the States are without power to directly burden interstate commerce and that commodities moving in such commerce only become subject to the control of the States or to the power on their part to directly burden after the termination of the interstate movement, that is, after the arrival and delivery of the commodities and their sale in the original packages, and that this rule is

as applicable to the movement of intoxicating liquors as to any other commodities.  (b) Because the Wilson Act only modifies these controlling rules by causing interstate commerce shipments of intoxicating liquors to come under state control at an earlier date than they otherwise would, that is, after delivery but before sale in the original packages.  (c) Because the power in interstate commerce shipments to make C. O. D. agreements, that is, agreements on delivery of the commodity shipped to collect and remit the price, is incidental to the right to make such shipments and the commodities when so shipped do not come under the authority of the State to which the commodities are shipped under such agreements until arrival and delivery, and therefore any attempt on the part of the State to directly burden or prohibit such contracts or prevent the fulfillment of the same necessarily comes within the general rule and is repugnant to the Constitution of the United States.

These propositions in substance have been by necessary implication or by direct decision so authoritatively and repeatedly determined as shown by the cases cited in the margin,[1] that there is no necessity for going further.  But in view of the fact that the court below held the statute to be not repugnant to the commerce clause not because it overlooked the rulings of this court referred to but because it considered them distinguishable or inapposite to this case for reasons deemed by it to be conclusive, there being some difference of opinion on the subject in the court below, we briefly refer to those reasons.

---

[1] *Leisy* v. *Hardin,* 135 U. S. 100; *In re Rahrer,* 140 U. S. 545; *Rhodes* v. *Iowa,* 170 U. S. 412; *Vance* v. *W. A. Vandercook Co.,* 170 U. S. 438; *Heyman* v. *Southern Railway,* 203 U. S. 270; *Adams Express Co.* v. *Kentucky,* 214 U. S. 218; *Louisville & Nashville R. R.* v. *Cook Brewing Co.,* 223 U. S. 70; *Kirmeyer* v. *Kansas,* 236 U. S. 568; *Rossi* v. *Pennsylvania,* 238 U. S. 62; *American Express Co.* v. *Iowa,* 196 U. S. 133; *Adams Express Co.* v. *Kentucky,* 206 U. S. 129.

It was said that the shipment of commodities contains two elements, one the obligation arising from the duty of the carrier to receive and carry without express contract, and the other such obligation as arises from contracts made concerning the shipment not embraced in the duty which rested by law upon the carrier in the absence of contract, the latter being illustrated by C. O. D. contracts. These two classes of obligations, it was pointed out, arising from different sources, were controlled by a consideration of the source whence they sprang, the one, the duty independent of contract, being commerce, and the other, the duty depending upon express contract in a sense independent of commerce, being governed by the law controlling contracts; that is to say, thé one being controlled by the commerce clause and the other by the law of the State. And from these generalizations it was concluded that however complete and efficacious was the control of the Constitution of the United States over the obligation resulting from shipments in the proper sense, it was clear that the power of the State was complete over the other class of obligations, those arising from distinct contracts, and hence the act imposing the burden on the contract to collect on delivery did not reach over into the domain of shipment, was independent of the same, and therefore was not repugnant to the commerce clause. But we think it is a sufficient answer to say that the reasoning referred to rests upon a misconception of the elementary notion of interstate commerce as inculcated and upheld from the beginning and as enforced in a line of decisions of this court beginning with the very birth of the Constitution and which in its fundamental aspect has undergone no change or suffered no deviation: that is, that the interstate commerce which is subject to the control of Congress embraces the widest freedom, including as a matter of course the right to make all contracts having a proper relation to the subject. Indeed, it must be at once apparent that if

the reasoning we are considering were to be entertained, the plenary power of Congress to legislate as to interstate commerce would be at an end and the limitations preventing state legislation directly burdening interstate commerce would no longer obtain and the freedom of interstate commerce which has been enjoyed by all the States would disappear. But to state these general considerations is indeed superfluous since in one of the previous cases which we have cited (*American Express Co.* v. *Iowa,* 196 U. S. 133, 143, 144) substantially the identical contention which we have just disposed of was relied upon and its unsoundness was expressly pointed out and the destructive consequences which would arise from its adoption stated.

The minor contentions to which we previously referred are these:

1. That although it be that § 239 of the Penal Code has no retroactive operation, it should be used as an instrument of interpretation from which to deduce the conclusion that the power of a State to prohibit shipments of intoxicating liquors in interstate commerce under C. O. D. contracts existed at the time here in question. But this by indirection simply seeks to cause the Act of Congress to retroactively apply by reasoning which if acceded to would require it to be said that all the previous decisions of this court dealing with the subject before the Penal Code was enacted were wrong and that in addition the enactment of § 239 was wholly unnecessary.

2. That even although there was a wrongful refusal of the Express Company to carry out the shipments its doing so was a mere violation of contract, giving a right to sue in damages but not for conversion. We see nothing in the record to indicate that this contention was urged in the trial court or in the court below. But passing this consideration, in view of our previous action rejecting a motion to dismiss, the question is foreclosed. But again

even· if this be put out of view, the proposition is without merit under the controlling state law. *Rice* v. *Indianapolis & St. Louis R. R.*, 3 Mo. App. 27; *Loeffler* v. *Keokuk Packet Co.*, 7 Mo. App. 185; *Danciger Bros.* v. *American Express Co.*, ·172 Mo. App. 391.

3. That this case is taken out of the settled rule to which we have referred and is controlled by the ruling in *Delamater* v. *South Dakota*, 205 U. S. 93. But the proposition presupposes that the decision in that case overruled the many decisions sustaining the rule without the· slightest indication of a purpose to do so. It proceeds upon an obvious misconception of the *Delamater Case* which instead of disregarding the construction put upon the Wilson Act and the many cases dealing with the subject, was on the contrary but an application in a new form · of the additional power which that act gave. In other words the case but held that inasmuch as Congress by virtue of its regulating authority had caused shipments of intoxicating liquors in interstate commerce to become subject to state authority after arrival and before sale in the original packages, the exertion by the State of its authority to prevent the carrying on in the State of the business of soliciting purchases of liquor to be shipped from other States was lawful as a mere exertion of police power not constituting a direct burden upon interstate commerce, since such a regulation was within the scope of the remedial authority conferred by Congress by virtue of the Wilson Act.

And the contention just stated leads to a reference to suggestions which we deem to be wholly irrelevant to the issue for decision made both in the opinion of the court below and in the argument at bar concerning possible abuses committed as the result of C. O. D. shipments of intoxicating liquors into States where the use of such liquor is prohibited, such as the unreasonable detention of such liquors before delivery, the ultimate delivery to a

person who had not ordered the same, the transfer to others by the ostensible person to whom the shipment was seemingly made, etc., etc. We say irrelevant suggestions because we are considering here not whether a state statute enacting reasonable regulations to prevent abuses under C. O. D. shipments would be a direct burden upon interstate commerce, but are only called upon to determine whether a statute is repugnant to the commerce clause which expressly asserts the power of the State to forbid all C. O. D. interstate commerce shipments of intoxicating liquors without reference to abuse of any kind or nature in the manner in which said contracts are carried out.

It follows from what we have said that the court below erred and that its judgment must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*And it is so ordered.*